FILED

OCT 23 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

GARY CARSON BROWN,

　　　　　Petitioner - Appellant,

　v.

MARK NOOTH,

　　　　　Respondent - Appellee.

No. 13-35711

D.C. No. 2:11-cv-01003-SU

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Submitted October 10, 2014[**]
Portland, Oregon

Before: GOULD, CHRISTEN, and NGUYEN, Circuit Judges.

　　Gary Carson Brown appeals the district court's denial of his 28 U.S.C. §

2254 habeas corpus petition.  Brown's petition challenges his state court

convictions and sentence stemming from the assault and kidnapping of Lindsey

---

　　[*]　　This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

　　[**]　　The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Ulrich.[1]  The State concedes the trial court violated Brown's Sixth Amendment

Confrontation Clause rights by admitting testimonial statements from a non-

testifying witness, Michelle Hartford, *Crawford v. Washington*, 541 U.S. 36, 53–54

(2004), but argues the error was harmless.  Brown argues the error had a

substantial and injurious effect on the jury's verdict.  We have jurisdiction under

28 U.S.C. §§ 1291 and 2253.  We affirm the district court's order.

We review de novo a district court order denying a petition for writ of

habeas corpus.  *Fairbank v. Ayers*, 650 F.3d 1243, 1250 (9th Cir. 2011).  The

Antiterrorism and Effective Death Penalty Act (AEDPA) permits federal courts to

grant a state prisoner habeas relief only if the state court's decision "was contrary

to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In determining whether a constitutional error was harmless on collateral

review, we examine "the record as a whole" and ask whether the violation had a

"substantial and injurious effect or influence in determining the jury's verdict."

*Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (quoting *Kotteakos v. United

States*, 328 U.S. 750, 776 (1946)); *accord Merolillo v. Yates*, 663 F.3d 444, 455

---

[1]    The parties are familiar with the facts of this case, so we will not
recount them here.

(9th Cir. 2011). We apply the *Brecht* test "without regard for the state court's harmlessness determination." *Ayala v. Wong*, 756 F.3d 656, 674 (9th Cir. 2014) (amended opinion) (quoting *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010)).[2] To guide our analysis of the *Brecht* test, we look to several non-exclusive factors: "the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony,[3] the extent of cross-examination permitted, and the overall strength of the

---

[2] Brown argues that "[w]here there is no reasoned opinion by the state court on the merits, this court should independently review the record, not subject to the deferential standard that applies under AEPDA." But the Oregon court is presumed to have decided that the *Crawford* error was harmless. *Harrington v. Richter*, 131 S. Ct. 770, 784–85 (2011). Because it is more stringent, the *Brecht* standard "obviously subsumes" the AEDPA standard for review of a state court determination of the harmlessness of a constitutional violation. *Fry v. Pliler*, 551 U.S. 112, 120 (2007) (noting that, because it "makes no sense to require formal application of both tests," *Brecht* alone should be applied).

[3] The corroborating evidence in this case was corroborating testimony. We have said:

> While corroborative evidence may, as a general rule, make the wrongful introduction of other evidence harmless, this concept has no application where: (1) there was a reason for the jury to doubt the only eyewitness testimony; (2) the third party testimony was not exceptionally strong; and (3) the physical evidence connecting the accused to the crime was limited and explained by [the defendant's theory of the case].

*Whelchel v. Washington*, 232 F.3d 1197, 1208 (9th Cir. 2000). The *Whelchel* factors are not implicated here.

prosecution's case." *Ocampo v. Vail*, 649 F.3d 1098, 1114 (9th Cir. 2011) (quoting *Whelchel v. Washington*, 232 F.3d 1197, 1206 (9th Cir. 2000)).

Considering these factors and all of the evidence presented to the jury, we conclude Hartford's erroneously admitted hearsay statements did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638 (quoting *Kotteakos*, 328 U.S. at 776). Hartford's out-of-court statements pertaining to Brown were limited to Brown's actions at the Causey Street apartment. As the district court aptly noted, "[e]ven without Hartford's statements, the record clearly showed Petitioner Brown to be an active participant in Ulrich's detention at the Causey apartment." *Brown v. Nooth*, No. 02:11-CV-01003, 2013 WL 4026179, at *4 (D. Or. Aug. 5, 2013). Ulrich testified that Brown told her she was not to leave the apartment or be seen by anyone. Ulrich also testified that Brown was at the apartment "most of the time" during the four days and was "only gone for a little bit, maybe a day." Ulrich recounted that Brown also handled guns in front of her, and said she was afraid that Brown would "take me somewhere and just shoot me to get everything out of the way." Ulrich was not allowed to leave the Causey apartment except in the company of others, including Brown. When she did go out, Brown "[j]ust always stayed close to" her.

In sum, we conclude Hartford's statements were not essential to the

4

prosecution's case, they were cumulative, and the prosecution's overall case was strong without them. *Ocampo*, 649 F.3d at 1114. The erroneous admission of Hartford's statements was harmless.

**AFFIRMED.**